UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

KAREN KELLEY, ISRAEL BARAJAS,      :
ERIN ENGLUND, CHRISTINE LIGHTNER, and      :
MICHAEL DUPREE, individually and each as      :
representatives of a class of similarly situated      :
individuals,      :
       :   No. 1:24-cv-5945-JAV
                 *Plaintiffs*,      :
       :   **ORAL ARGUMENT REQUESTED**
        v.      :
       :
TEACHERS INSURANCE AND ANNUITY      :
ASSOCIATION OF AMERICA, TIAA-CREF      :
INDIVIDUAL & INSTITUTIONAL SERVICES,      :
LLC, TIAA TRUST, N.A., MORNINGSTAR      :
INVESTMENT MANAGEMENT, LLC,      :
MORNINGSTAR INVESTMENT SERVICES, LLC,   :
and MORNINGSTAR, INC.,      :
       :
               *Defendants*.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## TIAA DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

James R. Carroll (admitted *pro hac vice*)
Michael S. Hines (admitted *pro hac vice*)
Mary E. Grinman (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
Tel: (617) 573-4800
Fax: (212) 735-2000
james.carroll@skadden.com
michael.hines@skadden.com
mary.grinman@skadden.com

Jay B. Kasner
Holly A. Gwydir
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Tel: (212) 735-3000
Fax: (212) 735-2000
jay.kasner@skadden.com
holly.gwydir@skadden.com

*Attorneys for Defendants Teachers Insurance
   and Annuity Association of America, TIAA-
   CREF Individual & Institutional Services,
   LLC, & TIAA Trust, N.A.*

Dated:  April 30, 2025

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

REPLY POINTS .............................................................................................................1

I.     THE OPPOSITION FAILS TO ESTABLISH ARTICLE III STANDING ........................1

     A.     The Opposition's Reliance On *Ross* and *Denney* Is Misplaced..............................1

     B.     The Opposition Fails To Establish That
Plaintiffs Kelley, Lightner, And Dupree Suffered An Injury .................................3

     C.     The Opposition Fails To Establish That
Plaintiffs Barajas And Englund Suffered An Injury ...............................................5

II.     THE OPPOSITION FAILS TO ESTABLISH THAT TIAA IS A FIDUCIARY ..............6

     A.     The Opposition Does Not Explain How
TIAA Acted As A Fiduciary With Respect To The
Actions That Are The Subject Of The Amended Complaint...................................6

     B.     The Opposition Fails To Establish
That TIAA Rendered Investment Advice ...............................................................7

III.     THE OPPOSITION FAILS TO SUPPORT
PLAINTIFFS' IMPRUDENCE ALLEGATIONS .............................................................8

IV.     THE OPPOSITION FAILS TO SUPPORT
PLAINTIFFS' PROHIBITED TRANSACTION CLAIM ..................................................9

V.     THE OPPOSITION FAILS TO SUPPORT AN UNDERLYING
BREACH FOR PLAINTIFFS' KNOWING PARTICIPATION CLAIM ........................10

**TABLE OF AUTHORITIES**

**CASES**                                                                                                      **PAGE(S)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................6, 9

*Carfora v. Teachers Insurance Annuity Association of America*,
    631 F. Supp. 3d 125 (S.D.N.Y. 2022) *amended in part*, No. 21 CIV. 8384 (KPF),
    2023 WL 5352402 (S.D.N.Y. Aug. 21, 2023)....................................................................8

*Chamber of Commerce of United States of America v. United States Department of
    Labor*,
    885 F.3d 360 (5th Cir. 2018) ...........................................................................................7

*Cunningham v. Cornell University*,
    No. 23-1007, 2025 WL 1128943 (U.S. Apr. 17, 2025) .............................................1, 6, 10

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)..........................................................................................1, 2

*Faber v. Metropolitan Life Insurance Co.*,
    648 F.3d 98 (2d Cir. 2011)...........................................................................................4, 5

*Moreira v. Societe Generale, S.A.*,
    125 F.4th 371 (2d Cir. 2025) ...........................................................................................5

*Moreno v. Deutsche Bank Americas Holding Corp.*,
    No. 15 CIV. 9936 (LGS), 2016 WL 5957307 (S.D.N.Y. Oct. 13, 2016) ...........................7

*Peters v. Aetna Inc.*,
    2 F.4th 199 (4th Cir. 2021) ..............................................................................................5

*Plutzer on behalf of Tharnanco Group, Inc. v. Bankers Trust Company of South Dakota*,
    No. 22-561-CV, 2022 WL 17086483 (2d Cir. Nov. 21, 2022)...........................................3

*Robainas v. Metropolitan Life Insurance Co.*,
    No. 14CV9926 DLC, 2015 WL 5918200 (S.D.N.Y. Oct. 9, 2015), *aff'd sub nom.
    Ross v. AXA Equitable Life Insurance Co.*, 680 F. App'x 41 (2d Cir. 2017) ..................2, 3

*Ross v. AXA Equitable Life Insurance Co.*,
    680 F. App'x 41 (2d Cir. 2017) ........................................................................................4

*Ross v. Bank of America, N.A.(USA)*,
    524 F.3d 217 (2d Cir. 2008)..........................................................................................1, 2

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944).........................................................................................................9

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)................................................................................................................5

**STATUTES**                                                                                         **PAGE(S)**

29 U.S.C. § 1002(21)(A)(ii) ...............................................................................................7

29 U.S.C. § 1104(e) ...........................................................................................................9

**OTHER AUTHORITIES**                                                                                **PAGE(S)**

Mar. 28, 2024 TC Services–Advice & Planning Services Form ADV Part 2A ..............................7

U.S. Dep't of Labor, Advisory Opinion 2001-09A (Dec. 14, 2001) ..........................................1, 9

The TIAA In-Plan Advice Tools were first developed many years ago, after the DOL approved a substantially similar tool in the SunAmerica Guidance in 2001.[1]  Consistent with the SunAmerica Guidance, the TIAA In-Plan Advice Tools issue recommendations based on Morningstar's independent modeling and methodologies, with no modification or discretion on the part of TIAA.  The Opposition largely ignores the SunAmerica Guidance.  Rather than grappling with how a program that mimics the SunAmerica Guidance could violate ERISA, the Opposition baldly asserts that "TIAA in fact exercised authority or control over the recommendations provided by the RAFV tool."  (Opp. at 16.)  Those allegations, along with many others in the Amended Complaint, are conclusory and fail to support a plausible claim.

## REPLY POINTS

### I.    THE OPPOSITION FAILS TO ESTABLISH ARTICLE III STANDING

Earlier this month, the Supreme Court underscored the importance of Article III standing in ERISA litigation at the motion to dismiss stage, stating that when plaintiffs bring "barebones" ERISA suits, "[d]istrict courts must also, consistent with Article III standing, dismiss suits that allege a prohibited transaction occurred but fail to identify an injury."  *Cunningham v. Cornell Univ.*, No. 23-1007, 2025 WL 1128943, at *8 (U.S. Apr. 17, 2025).  None of Plaintiffs identify any cognizable injury.

#### A.    The Opposition's Reliance On *Ross* and *Denney* Is Misplaced

Plaintiffs rely on *Ross v. Bank of Am., N.A.(USA)*, 524 F.3d 217 (2d Cir. 2008) and *Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) to argue that they have suffered an

---

[1]    Capitalized terms herein have the same meaning as in the TIAA Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss The First Amended Complaint (ECF No. 76) ("Moving Brief," cited as "Mov. Br. at __").  Plaintiffs' Memorandum In Opposition To TIAA Defendants' Motion To Dismiss First Amended Complaint (ECF No. 87) is referred to as the "Opposition" (cited as "Opp. at __").

Article III injury based on "'reduced choice and diminished quality' of financial services." (*See* Opp. at 9-10.) *Ross* and *Denney* are not on point.

In *Ross*, the plaintiffs alleged that bank defendants violated antitrust law by colluding to "remov[e] all non-arbitration credit cards from the market, thereby depriving the cardholders of meaningful choice." 524 F.3d at 221. The Second Circuit held that "[t]he harms claimed by the cardholders, which lie at the heart of their [c]omplaint, are injuries to the market." *Id.* at 223. The court concluded that the plaintiffs suffered an Article III injury because the defendants' illegal collusion restricted the market and forced the plaintiffs to select "objectively less valuable cards." *Id.* at 224. Plaintiffs here do not allege any anticompetitive conduct or market harm.

*Denney* is similarly inapposite. 443 F.3d 253. There, the plaintiffs alleged that they suffered an injury as a result of "improper and fraudulent tax counseling" by a law firm, resulting in strategies declared "illegal" by the IRS. *Id.* at 259. The plaintiffs alleged that they "t[ook] costly and time-consuming steps to rectify errors in their past or future tax filings" and that they paid "excessive fees" for the advice. *Id.* at 265. Accordingly, the Second Circuit found that the plaintiffs "suffered injuries-in-fact." *Id.* Plaintiffs here have not suffered similar injuries, or any other injuries. Plaintiffs do not identify any out-of-pocket costs that they incurred in "rectify[ing]" the advice received from the TIAA In-Plan Advice Tools. Plaintiffs also acknowledge that they did not pay fees for the Retirement Advisor tool (Am. Compl. ¶ 133) and Plaintiffs do not allege that the costs of RPPM were higher than any comparable service. Plaintiffs' conclusory allegations that the services they received "did not justify their cost" cannot confer Article III standing. *See Robainas v. Metro. Life Ins. Co.*, No. 14CV9926 DLC, 2015 WL 5918200, at *6 (S.D.N.Y. Oct. 9, 2015) (rejecting plaintiffs' "claim that they paid higher premiums for insurance policies than they would have absent [defendant's] failure to

2

disclose its shadow insurance" and holding that "this conclusory assertion of such injury without any plausible basis does not confer standing"), *aff'd sub nom. Ross v. AXA Equitable Life Ins. Co.*, 680 F. App'x 41 (2d Cir. 2017) (summary order).

### B.     The Opposition Fails To Establish That Plaintiffs Kelley, Lightner, And Dupree Suffered An Injury

Plaintiffs Kelley, Lightner, and Dupree advance four unavailing arguments to support standing. *First*, Plaintiffs rely on the conclusory assertion that "Defendants' conduct caused them financial losses in the form of worse performance and higher fees." (Opp. at 11.) "[W]orse performance and higher fees" than what? Plaintiffs do not answer that question. Instead, Plaintiffs urge that they need not plead "details" like "specific time periods" and "performance figures." (*Id.*) But those items are not details; they are the foundation of Article III standing. As the Second Circuit held, "[w]hile the standard for reviewing standing at the pleading stage is lenient, a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing." *Plutzer on behalf of Tharnanco Grp., Inc. v. Bankers Tr. Co. of S. Dakota*, No. 22-561-CV, 2022 WL 17086483, at *2 (2d Cir. Nov. 21, 2022). In *Plutzer*, the plaintiff alleged that he was injured when his ERISA plan overpaid for shares of his employers' stock. *Id.* at *2. The Second Circuit affirmed dismissal for lack of Article III standing, holding that "even if overpayment may constitute a sufficient injury in fact in the general case, the complaint here does not adequately allege that overpayment occurred" because the plaintiffs' allegations in support are "speculative and conclusory." *Id.* (citation omitted). So too here. The Court should decline Plaintiffs' invitation to simply take their word for it that their retirement plan assets "would have been invested in better-performing and lower-cost investments but for Defendants' misconduct." (Opp. at 11.)

3

*Second*, Plaintiffs assert -- but the Amended Complaint does not plead -- that "[h]ad Defendants not breached their fiduciary duties, Plaintiffs likely still would have sought investment advice and made certain changes to their prior allocations," purportedly resulting in "a more efficient and better-performing portfolio allocation" and "enhanced savings." (Opp. at 10, 12.) That argument highlights the impermissibly conclusory nature of Plaintiffs' "injury" allegations. Plaintiffs do not allege what advice they would have sought. They also do not allege *a single* "more efficient and better-performing portfolio allocation" that they would have invested in, or *how* they would have achieved "enhanced savings." (*See id.*)

*Third*, Plaintiffs argue that the "illiquid nature of the TIAA Traditional Annuity" (Opp. at 12) is an injury because they would face "withdrawal penalties and restrictions if (like most retirees) they choose not to annuitize at retirement" (Am. Compl. ¶ 198). Plaintiffs cite no authority to support a finding that disclosed contractual withdrawal restrictions are themselves "injuries." In any event, Plaintiffs' concerns about future illiquidity if, and only if, they "choose not to annuitize at retirement" are too speculative to confer Article III standing. *See Ross*, 680 F. App'x at 45 (observing that the Supreme Court has "repeatedly reiterated that threatened injury must be *clearly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient").

*Fourth*, in a final effort to satisfy the injury prong of Article III, Plaintiffs state that even if they did not "realize[] a financial loss," they are entitled to injunctive relief. (Opp. at 13.) But the only relief they purport to seek is "disgorgement" of Defendants' profits. (*Id.*) Plaintiffs' own cases establish that disgorgement is not permissible absent an actual injury. *See, e.g.*, *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 102-03 (2d Cir. 2011) (observing that "[i]n the ERISA context, we have drawn a distinction between constitutional standing to seek injunctive relief and

4

constitutional standing to seek disgorgement" and holding that the plaintiff "has constitutional standing to seek injunctive relief") (cited at Opp. 13); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021) (holding that "a plaintiff's standing to seek injunctive relief does not necessarily mean that the plaintiff has standing to seek retrospective damages") (cited at Opp. 8-9).[2]

## C.    The Opposition Fails To Establish That Plaintiffs Barajas And Englund Suffered An Injury

Plaintiffs Barajas and Englund allege that they suffered financial harm because, on an arbitrary and undisclosed day in November 2024, some (but not all) of their plan accounts were worth less than they would have been if they had remained invested in certain target date funds. (Am. Compl. ¶¶ 28-36.)  Plaintiffs do not explain their calculations or why they provide no calculations for Plaintiffs Kelley, Lightner, or Dupree.  Nonetheless, the Opposition asserts that those allegations are sufficient because "'*[a]ny monetary loss* suffered by the plaintiff satisfies' the injury-in-fact element."  (Opp. at 14.)  But Plaintiffs do not allege a "monetary loss."  They only allege that some of their plan accounts were worth less on a random day than a hypothetical account that was invested in a different way.  If that were sufficient for Article III standing, then any participant of any retirement plan would always have standing to bring a claim.  The requirements of Article III are not so illusory, and as the Supreme Court recently emphasized,

---

[2]    Plaintiffs' other cited cases do not support a contrary conclusion.  In *Moreira v. Societe Generale, S.A.*, the Second Circuit held that the defendants, who had "used, and profited" from the plaintiffs' "wrongfully confiscated assets" had "inflict[ed] 'a pocketbook injury' on the plaintiffs," which "constitutes an ongoing and tangible financial harm."  125 F.4th 371, 385 (2d Cir. 2025).  By contrast, Plaintiffs here have not suffered a "pocketbook injury."  Similarly in *Peters v. Aetna Inc.* -- an out of circuit decision which does not bind this Court -- the Fourth Circuit held that the plaintiff "demonstrates a financial injury sufficient to establish standing."  2 F.4th 199, 218 (4th Cir. 2021).  The court's statement that the plaintiff could seek disgorgement even without a financial harm is *dicta* that conflicts with the Second Circuit's holding in *Faber*, as discussed above.  *See Peters*, 2 F.4th at 218; *Faber*, 648 F.3d at 102-03.

courts must dismiss suits -- like this one -- that "fail to identify an injury." *Cunningham*, 2025 WL 1128943, at *8.[3]

## II.  THE OPPOSITION FAILS TO ESTABLISH THAT TIAA IS A FIDUCIARY

### A.  The Opposition Does Not Explain How TIAA Acted As A Fiduciary With Respect To The Actions That Are The Subject Of The Amended Complaint

Plaintiffs do not dispute that TIAA has no discretion over whether the Challenged Annuities are included in a particular plan lineup. (*See* Mov. Br. at 13.) Instead, Plaintiffs assert that "the inclusion or exclusion of the Challenged Annuities . . . is not the conduct at issue in the complaint." (Opp. at 15.) Not so. Plaintiffs' Amended Complaint expressly challenges the "increase[d] flow of assets" into the Challenged Annuities (Am. Compl. ¶ 2), which could only happen if plan sponsors chose to include the Challenged Annuities in the subject plan lineups.

*First*, Plaintiffs assert that TIAA is a fiduciary because it "exercised authority or control over the recommendations provided by the RAFV tool" and any TIAA marketing materials that state the opposite are "false." (Opp. at 16.) But those assertions are not supported by requisite well-pled allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"). Plaintiffs argue that the Court must simply take them at their word that TIAA's marketing materials are false, but Plaintiffs do not plead any facts to support that conclusory allegation. This Court is not required to -- and it should not -- accept Plaintiffs' "naked assertions" as well-pled facts. Plaintiffs are also mistaken in asserting that "TIAA concedes that Plaintiffs plausibly allege

---

[3]    Plaintiffs Barajas and Englund also assert that they have "class standing" with respect to the TIAA Traditional Annuity and RPPM. (Opp. at 13-14.) Plaintiffs acknowledge that class standing requires them to "personally ha[ve] suffered some actual . . . injury." (*Id.* at 13.) Plaintiffs do not satisfy that element of class standing. TIAA also disputes that its alleged conduct related to Plaintiffs Barajas and Englund "implicates the same set of concerns" as the alleged conduct related to the TIAA Traditional Annuity and RPPM. (*Id*. at 13-14).

6

disloyalty." (Opp. at 19.)  Plaintiffs do not plead that TIAA had discretion over the allocation recommendations, and therefore do not plead disloyalty with respect to those recommendations.

*Second*, Plaintiffs object to TIAA's citation to TC Services' Form ADV (*see* Mov. Br. at 14-15), arguing that TIAA asks the Court to rely on statements therein for the truth of the matters asserted.  Plaintiffs miss the point.  TIAA does not ask the Court to assume the truth of the statements in the Form ADV; rather, TIAA cites the ADV to remedy Plaintiffs' mis-citation of the same document.  The Amended Complaint cites the Form ADV as purported evidence that TIAA acknowledges fiduciary obligations (Am. Compl. ¶¶ 222-25), but Plaintiffs fail to state that the document expressly disclaims fiduciary responsibility for the conduct that is the subject of the Amended Complaint (*see* Mov. Br. at 14-15).

**B.** **The Opposition Fails To Establish That TIAA Rendered Investment Advice**

Plaintiffs assert that the "unambiguous language" of ERISA § 1002(21)(A)(ii) defines TIAA as a fiduciary that provides investment advice.  (Opp. at 17.)  But courts in this district have "incorporated" the DOL's five-part test "when interpreting § 1002(21)(A)(ii)," which requires Plaintiffs to allege that TIAA provided advice "on a regular basis."  *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 CIV. 9936 (LGS), 2016 WL 5957307, at *8 (S.D.N.Y. Oct. 13, 2016).  Plaintiffs provide no reason to ignore that test, which has been held to "capture[] the essence of a fiduciary relationship known to the common law."  *See Chamber of Com. of United States of Am. v. United States Dep't of Lab.*, 885 F.3d 360, 365 (5th Cir. 2018).

Plaintiffs rely on three paragraphs of their pleadings to assert that TIAA admits providing advice on a "regular basis."  (Opp. at 18 (citing Am. Compl, ¶¶ 126, 171, 208).)  Paragraph 208 states that "participants" (not TIAA) "periodically" (not regularly) were required to "update their information."  And Paragraph 126 states, with no factual support, that "TIAA and Morningstar

7

regularly review the RAFV tool allocations"; it does not state that those purported reviews include any specific participant allocations or that TIAA or Morningstar regularly advise plan participants about the results of those purported reviews.  Paragraph 171 only concerns RPPM.[4]

Plaintiffs also dispute the applicability of *Carfora* because *Carfora* involved moving assets out of a plan while this case is about assets that remain in-plan.  (Opp. at 17-18.)  But *Carfora* is not so limited.  *Carfora v. Tchrs. Ins. Annuity Ass'n of Am.*, 631 F. Supp. 3d 125, 145 (S.D.N.Y. 2022), *amended in part*, No. 21 CIV. 8384 (KPF), 2023 WL 5352402 (S.D.N.Y. Aug. 21, 2023).  *Carfora* held that "for TIAA to have provided advice on a 'regular basis,' there must have been some number of instances in which advice was provided" and "two to three interactions are clearly insufficient."  *Id.*  It also held that "aggregat[ing] all of TIAA's interactions with various plan participants . . . is not supported in the caselaw, and indeed is contradicted by the statutory text and prevailing regulations."  *Id.* at 146.

## III.     THE OPPOSITION FAILS TO SUPPORT PLAINTIFFS' IMPRUDENCE ALLEGATIONS

Plaintiffs do not attempt to defend their threadbare allegations about the performance and fees of the Challenged Annuities, arguing that those pleading failures are "irrelevant."  (Opp. at 21.)  But the gravamen of Plaintiffs' imprudence claim is that "Defendants acted imprudently in recommending certain allocations to the TIAA Traditional Annuity and the TIAA Real Estate Account to every participant."  (Am. Compl. ¶ 271.)  Plaintiffs' failure to plead facts to support a plausible inference that the Challenged Annuities were imprudent also means that Plaintiffs cannot state a claim that recommended allocations to the Challenged Annuities were imprudent.

---

[4]     Plaintiffs also assert that TIAA "assumes 3(38) fiduciary responsibility" with respect to RPPM (Opp. at 17), but the only Plaintiff who used RPPM is Mr. Dupree, who fails to allege that he suffered any injuries (Mov. Br. at 9-10).  In any event, Plaintiffs do not allege that any party other than TIAA Trust, N.A. acted as a fiduciary with respect to RPPM.  (Am. Compl. ¶ 134.)

Plaintiffs assert that regardless of the underlying prudence of the Challenged Annuities, the allocations recommended by the TIAA In-Plan Advice Tools were imprudent because they were "conflicted" and did not "compl[y] with industry standards."  (Opp. at 20-21.)  Those allegations fail for the reasons explained by Morningstar.  (*See* ECF 79 at 21-23.)  As explained above and in the Moving Brief, TIAA also does not have any discretion or influence on the allocations, which were therefore entirely free of conflict.  (*See* Mov. Br. at 5, 14-15.)  In any event, Plaintiffs' assertion that a prudent fiduciary would "understand that the use of annuities in a tax-sheltered retirement plan provides no additional benefit" is absurd.  (*See* Opp. at 20.)  ERISA expressly contemplates that annuities may be used in retirement plans and provides a safe harbor for annuity selection.  *See* 29 U.S.C. § 1104(e).

## IV.    THE OPPOSITION FAILS TO SUPPORT PLAINTIFFS' PROHIBITED TRANSACTION CLAIM

Plaintiffs make only two arguments in support of their prohibited transaction claim, neither of which stands up to scrutiny.  *First*, Plaintiffs uncontroversially state that the SunAmerica Guidance "lack[s] the force of law."  (Opp. at 22.)  But as explained in the Moving Brief, the SunAmerica Guidance is "entitled to respect" to the extent that it has the "power to persuade."  *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).  The Opposition does not dispute that the SunAmerica Guidance has the "power to persuade."

*Second*, Plaintiffs allege that the TIAA In-Plan Advice Tools are dissimilar to the tools described in the SunAmerica Guidance because TIAA purportedly had "'substantial input' and 'direction' on the output of the RAFV tool."  (Opp. at 23.)  As explained above, Plaintiffs' "naked assertion" that TIAA had input in the allocation methodology of the TIAA In-Plan Advice Tools is too conclusory to state a claim.  *Ashcroft*, 556 U.S. at 678.

## V.    THE OPPOSITION FAILS TO SUPPORT AN UNDERLYING BREACH FOR PLAINTIFFS' KNOWING PARTICIPATION CLAIM

Plaintiffs assert, without any support, that thousands of plan sponsors across the country breached their fiduciary duties of prudence by "failing to adequately investigate and monitor" TIAA's role in the TIAA In-Plan Advice Tools.  (Opp. at 24.)  Like so many of Plaintiffs' other allegations, these assertions are wholly conclusory.  Plaintiffs plead no facts about *how* the thousands of plan sponsors failed to investigate TIAA's role, instead asking the Court to infer that the plan sponsors' failure to "eliminate[]" the TIAA In-Plan Advice Tool is sufficient to state a claim.  (*Id.* at 24-25 ("[T]he Plan Sponsors did none of those things, as shown by the fact that TIAA's scheme remains ongoing.").)  Plaintiffs themselves acknowledge that "prudence is a test of process rather than results" and that a plaintiff "cannot rely solely on hindsight" (*id.* at 21), yet that is precisely what Plaintiffs' knowing participation claim rests upon.

Moreover, Plaintiffs fail to allege that any plan sponsor engaged in a prohibited transaction because Plaintiffs do not allege that the TIAA In-Plan Advice Tools were "unnecessary" or "involved unreasonable compensation."  (Mov. Br. at 25-26.)  Plaintiffs do not dispute that the tools are necessary, and as discussed above, Plaintiffs' allegations about unreasonable fees are conclusory.  (Part I.A at 2-3, *supra*.)  Although the Supreme Court ruled that a plaintiff can state a prohibited transactions claim against a *plan sponsor* by alleging that it knowingly caused the plan to transfer assets to a service provider such as TIAA, the Court did not hold that such barebones allegations can support a knowing participation claim against the *service provider*.  *See Cunningham*, 2025 WL 1128943, at *2.  It makes no sense to expose all service providers to knowing participation claims merely by virtue of those providers agreeing to perform services for a retirement plan in exchange for a fee.

10

Dated: April 30, 2025                        Respectfully submitted,
      Boston, Massachusetts


                              */s/ Michael S. Hines*
                              Jay B. Kasner
                              Holly A. Gwydir
                              SKADDEN, ARPS, SLATE,
                                 MEAGHER & FLOM LLP
                              One Manhattan West
                              New York, New York 10001
                              Tel: (212) 735-3000
                              Fax: (212) 735-2000
                              jay.kasner@skadden.com
                              holly.gwydir@skadden.com

                              James R. Carroll (admitted *pro hac vice*)
                              Michael S. Hines (admitted *pro hac vice*)
                              Mary E. Grinman (admitted *pro hac vice*)
                              SKADDEN, ARPS, SLATE,
                               MEAGHER & FLOM LLP
                              500 Boylston Street
                              Boston, Massachusetts 02116
                              Tel: (617) 573-4800
                              Fax: (212) 735-2000
                              james.carroll@skadden.com
                              michael.hines@skadden.com
                              mary.grinman@skadden.com

                              *Attorneys for Defendants Teachers Insurance*
                               *and Annuity Association of America, TIAA-*
                               *CREF Individual & Institutional Services,*
                               *LLC, & TIAA Trust, N.A.*

11

## CERTIFICATION OF WORD COUNT

I, Michael S. Hines, hereby certify that this memorandum of law complies with the word-count limitations set forth in Local Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, and contains 3313 words, exclusive of the caption, the table of contents, the table of authorities, the signature blocks, and this certificate.

Dated: April 30, 2025
    Boston, Massachusetts

                                                  /s/ Michael S. Hines
                                                  Michael S. Hines

12